■ ANTHONY WARING, Respondent, v SUNRISE YONKERS SL, LLC, Appellant. [21 NYS3d 70]—

Judgment, Supreme Court, Bronx County (Sharon A.M. Aarons, J.), entered September 29, 2014, after a jury trial, awarding plaintiff damages including $100,000 for past pain and suffering, $500,000 for future pain and suffering, $80,000 for past lost wages, and, as stipulated to by plaintiff, $200,000 for future lost wages and $65,000 for future medical expenses, unanimously affirmed, without costs.

On December 20, 2008, plaintiff, then 22 years old, was injured when, in the course of his employment with nonparty Sunrise Senior Living Management, Inc. (SSLM) at an assisted living facility, he slipped and fell on a snow-covered ramp leading to a storage shed. Defendant owned the property and retained SSLM to manage it.

Defendant failed to establish that it was an out-of-possession landowner with limited liability to third persons injured on the property (*see Gronski v County of Monroe*, 18 NY3d 374 [2011]). Its management agreement with SSLM gave SSLM "complete and full control and discretion in the operation . . . of the Facility" and required SSLM to "maintain the Facility . . . in conformity with applicable Legal Requirements." However, defendant had "access to the Facility at any and all reasonable times for the purpose of inspection," had access to SSLM's books and records, and was required to fund operating shortfalls, and SSLM was required to report to defendant regularly and to maintain bank accounts in approved financial institutions "as agent for [defendant]."

Significantly, the management agreement requires defendant to indemnify SSLM for claims arising out of SSLM's own negligence in the performance of its duties. This agreement to indemnify is analogous to the procurement of insurance, which constitutes evidence of ownership and control (*see Leotta v Plessinger*, 8 NY2d 449, 462 [1960]; *McGovern v Oliver*, 177 App Div 167 [1st Dept 1917]). It evidences defendant's intent to be responsible for any accidents on the property. But for the fortuity of plaintiff's being an employee who was barred from suing his employer, defendant would be responsible, through the indemnification provision, for his injuries.

The court properly refused to charge comparative fault since there is no valid line of reasoning based on the trial evidence by which a jury could rationally conclude that plaintiff was negligent (*see Cuadrado v New York City Tr. Auth.*, 65 AD3d 434, 435 [1st Dept 2009], *lv dismissed* 14 NY3d 748 [2010]). Defendant identifies neither actions that plaintiff took, such as rushing, that could be construed as negligent, nor reasonable steps that plaintiff, who wore boots while using the only available means of access to the shed, in response to a direct order, could or should have taken to avoid the happening of the accident (*see Perales v City of New York*, 274 AD2d 349 [1st Dept 2000]).

We reject defendant's argument that plaintiff failed to mitigate his damages. There is no evidence that either plaintiff's failure to fully comply with physical therapy orders or his sleeping on couches while homeless affected his recovery or contributed to his injuries (*cf. Robinson v United States*, 330 F Supp 2d 261, 275 [WD NY 2004] [physical therapist reported that plaintiff's poor attendance "had affected his progress in physical therapy"]), and there is no evidence that plaintiff, who obtained a GED to increase his employment prospects and was looking for work, made, as defendant claims, only minimal effort to seek employment.

Plaintiff's past lost wages were established with reasonable certainty through the testimony of SSLM's executive director, Mark Weinberger (*see Estate of Ferguson v City of New York*, 73 AD3d 649 [1st Dept 2010]), which defendant did not challenge (*see Kane v Coundorous*, 11 AD3d 304, 305 [1st Dept 2004]). The future lost wages claim was also premised upon Mr. Weinberger's testimony as to plaintiff's earnings at the time of the accident, and the court's reduction of that award to $200,000 from the jury's award of $400,000, which was stipulated to by plaintiff, reflects the testimony that plaintiff will eventually be able to find employment, and is supported by the record. The award for future medical expenses, as reduced and stipulated to by plaintiff, is supported by plaintiff's doctor's testimony.

Plaintiff sustained two bulging cervical discs and three lumbar herniations with impingement, and experienced only limited improvement from physical therapy and epidural injections. He is still in treatment for his injuries, which are permanent, he suffers daily pain and will require surgery and/or a spinal cord stimulator and continuing pain management, and he must restrict his activities, although he may perform sedentary work. These circumstances support the $100,000 award for past pain and suffering, as well as the $500,000 award for future pain and suffering, over the course of 31 years (*see Rutledge v New York City Tr. Auth.*, 103 AD3d 423 [1st Dept 2013]; *James v Farhood*, 96 AD3d 503 [1st Dept 2012]).

We reject defendant's remaining contention, i.e., that plaintiff's counsel's comments in summation warrant a new trial. Concur—Mazzarelli, J.P., Richter, Manzanet-Daniels and Kapnick, JJ.